IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARINA BROWN, APRIL WALKER, | : | CIVIL ACTION |
| and MICHELLE AARON, individually and | : | |
| on behalf of others similarly situated, | : | |
| | : | |
| v. | : | |
| | : | |
| PROGRESSIONS BEHAVIORAL HEALTH | : | |
| SERVICES, INC. | : | NO. 16-6054 |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                                  July 13, 2017

Plaintiffs Sarina Brown, April Walker, and Michelle Aaron ("Plaintiffs" or "Class Representatives") have filed an unopposed motion to approve the settlement in this Fair Labor Standards Act ("FLSA") collective action (Doc. 13), and an unopposed motion for attorneys' fees and reimbursement of expenses (Doc. 14). For the reasons that follow, I will certify the collective action and settlement class and approve the settlement, and grant the motion for attorneys' fees and expenses.

I.     **FACTUAL BACKGROUND**

The Class Representatives brought this collective action on behalf of themselves and other lead clinicians, behavioral specialist consultants, and/or mobile therapists who worked for Defendant for at least thirty (30) billable hours in four (4) or more workweeks from November 17, 2013, until May 8, 2017 ("Class Members"), alleging that Defendant unlawfully misclassified them as independent contractors, resulting in the denial of overtime compensation and certain wages and employee benefits, and failed to pay them for certain work deemed "non-billable" by Defendant. See Doc. 13 at 1; Joint Stipulation

of Settlement and Release, Doc. 13-2 Exh. 2 ("Agreement") ¶¶ 1, 4.  Defendant disputes the class allegations and that it violated applicable wage laws.  See Agreement ¶ 2.

Plaintiffs aver that counsel engaged in "vigorous arms-length negotiations," Doc. 13-1 at 20 -- a characterization that Defendant does not contest.  On January 20, 2017, the parties agreed to stay proceedings and attend mediation in an effort to resolve the case.  Doc. 5.  On April 4, 2017, the parties participated in a full-day mediation with the Honorable Thomas M. Blewitt (retired) of JAMS, who assisted the parties in reaching the Agreement.

The Agreement provides for a total settlement amount of $865,000.00, of which approximately $542,586.00 will be distributed to Class Members (the "Settlement Fund"), with the remaining amount sought by counsel for attorneys' fees representing 33 percent of the settlement amount ($285,450.00), plus costs ($3,714.00), "service award" payments for each of the Class Representatives ($10,000.00 x 3 = $30,000.00), and Claims Administrator's expenses ($3,250.00).[1]  Agreement ¶¶ 5, 11-13.  The Agreement further provides that Class Members will receive payment from the Settlement Fund, on a pro rata basis, based on the degree to which they were economically impacted by the alleged wage shortfalls.  Id. ¶ 5.  Class counsel avers that participating Class Members may receive amounts ranging from approximately $500.00 up to a maximum of $70,000.00, with an average payout of approximately 10,000.00.  Doc. 13-1 at 4.

---

[1] The Agreement states that reasonable claims administration expenses will not exceed $6,500.00, with 50 percent to be paid from the settlement amount and 50 percent to be paid by Defendant directly.  Agreement ¶ 12.

2

By Order dated May 8, 2017, I conditionally certified the collective action and settlement class, preliminarily approved the Agreement, approved the form of the class notice and opt-out form, and set a final hearing date of June 28, 2017.  See Doc. 12 ("Preliminary Approval Order").  Pursuant to the Preliminary Approval Order, class members were informed of the terms of the Agreement, that they had the right to opt-out of the monetary provisions and pursue their own remedies, that the deadline for returning executed claim forms requesting exclusion from the proposed settlement was 30 days from the date the exclusion/opt-out forms were mailed, and that they had a deadline of June 21, 2017, for filing and serving written notices of intent to appear at the Final Approval Hearing.  Doc. 12 ¶¶ 8-9, 11; Doc. 13-1 at 5; Doc. 13-2 Exh. 4.  The Claims Administrator mailed the Class Notice and Exclusion/Opt-Out Forms to the 55 class members on May 16, 2017, using contact information provided by Defendant.  See Decl. of -Melissa Baldwin ("Baldwin Decl."), Doc. 13-1 Exh. 5 ¶¶ 3-5; Doc. 13-2 at 46 (ECF pagination).  The Claims Administrator did not receive any Exclusion/Opt-Out Forms before or after the June 21, 2017 deadline, and did not receive any objections to the settlement, see Baldwin Decl. ¶¶ 3-5, and counsel represented to the court that they had had not received any objections or any notices of intent to appear at the final approval hearing.  As a result, the Final Approval Hearing was cancelled by Order dated June 26, 2017, see Doc. 16, and the uncontested motions will be decided on the pleadings and exhibits attached thereto.

## II.    DISCUSSION

### A.    Motion for Certification and Approval of Settlement (Doc. 13)

Plaintiffs first move for an order certifying the settlement class, granting a service award to the Class Representatives, and approving the settlement agreement. Doc. 13. Class actions are governed by Federal Rule of Civil Procedure 23, which requires that a settlement class meet four prerequisites: (1) the class is so numerous that joinder of all the members is impracticable, (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4); In re Comm. Bank of N. Va., 418 F.3d 277, 302 (3d Cir. 2005), rev'd on other grounds, 622 F.3d 275 (3d Cir. 2010); see also Bredbenner v. Liberty Travel, Civ. Nos. 09-905, 09-1248, 09-4587, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (applying Rule 23 analysis in FLSA case). For the following reasons, the motion will be granted.

#### 1.    Certification

Class certification in an FLSA collective action is a two-step process. During the first or notice stage, the court "determines whether similarly situated plaintiffs do in fact exist." Amadi v. Cardo Windows, Inc., 299 F.R.D. 68, 78 (D.N.J. 2014) (citing Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013); Zavala v. Wal Mart Stores Inc., 691 F.527, 535 (3d Cir. 2012)). At the second or final stage of certification, following notice to prospective Class Members and an opportunity for them to opt-out or

object, the court "determines whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." Zavala, 691 F.3d at 536 & n.4.

With the expiration of the initial notice period, the court is now in a position to assess the class.[2] Of the 55 Class Members, none opted-out of the settlement, and none objected to the Agreement. Thus, all of the individuals identified as potential class members have opted to participate.[3]

In completing the certification of the collective action, the court must determine whether these Plaintiffs are similarly situated. See Lovett v. ConnectAmerica.com, Civ. No. 14-2596, 2015 WL 5334261, at *2 (E.D. Pa. Sept. 14, 2015) (citing Singleton v. First Student Mgmt., LLC, Civ. No. 13-1744, 2014 WL 3865853, at *3 (D.N.J. Aug. 6, 2014) (certifying collective action for settlement absent specific argument on issue); Bredbenner, 2011 WL 1344745, at *17 (granting final notification prior to approving settlement of FLSA collective action)). The burden is on Plaintiffs and "the court must consider a number of factors, including but not limited to: 'whether the plaintiffs are

---

[2] I note that the names and addresses of all prospective Class Members were easily ascertainable by the Defendant, their current or former employer, and that notices and Exclusion/Opt-Out Forms were in fact mailed to each such person. Baldwin Decl. ¶¶ 4-6. Mr. Baldwin noted that only two notices were returned as undeliverable, and that the Claims Administrator was able to locate updated addresses, resulting in 100 percent of the notices being presumptively delivered. Id. ¶ 5. Therefore, in the absence of any suggestion to the contrary, I find that notice through the mail was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2).

[3] The existence of 55 class members meets the numerosity requirement of Rule 23(a), insofar as joinder of all individuals would be impracticable. See Fed. R. Civ. P. 26(a)(1); Grant v. Sullivan, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (for purposes of Rule 23 numerosity requirement, "[t]his court may certify a class even if it is composed of as few as 14 members.") (citation omitted).

employed in the same corporate department, division and location; whether they advance similar claims; whether they seek substantially the same form of relief, and whether they have similar salaries and circumstances of employment.'" Lovett, 2015 WL 5334261, at *2 (quoting Keller v. TD Bank, N.A., Civ. No. 12-5054, 2014 WL 5591033, at *8 (E.D. Pa. Nov. 4, 2014; Zavala, 691 F.3d at 536)).

Although there has been no supplemental information regarding the opt-in Plaintiffs, the information provided prior to the conditional certification of the class directs a finding that Plaintiffs are similarly situated. Based on the allegations in the Complaint and those contained in the Agreement, each of the class members is a lead clinician, behavioral specialist consultant, and/or mobile therapist who worked for Defendant for at least thirty (30) billable hours in four (4) or more workweeks from November 17, 2013, until May 8, 2017. Agreement ¶¶ 1, 4. As a result, the class members were all non-exempt, hourly employees of Defendant, and all were paid the same way and were subject to the same payroll and time-keeping practices. Not surprisingly, therefore, each member of the class has virtually identical claims -- specifically, that Defendant misclassified them as independent contractors and thereby failed to pay them statutorily-mandated overtime compensation and wages, and failed to pay them for certain work deemed "non-billable" by Defendant. Id. ¶¶ 3-5. The Agreement provides Class Members with payments from the Settlement Fund on a pro rata basis, based on the degree to which they were economically-impacted by the alleged wage shortfalls. Id. ¶¶ 5-6. The Agreement further provides that 60 percent of each settlement payment will represent alleged lost wages, and 40 percent will represent

6

alleged liquidated damages and/or alleged interest. Id. ¶ 6. Plaintiffs aver that the payments from the Settlement Fund will "represent a significant recovery of the unpaid wages and overtime compensation that could reasonably have been proven at trial." Doc. 13-1 at 11.

For these reasons, I conclude that the Class Members are similarly situated[4] and will certify the collective action and the settlement class.

### 3. FLSA Settlement

The purpose of the FLSA is "to protect certain groups . . . from substandard wages and excessive hours which endanger the national health and wellbeing and the free flow of goods in interstate commerce." Adams v. Bayview Asset Mgmt., LLC, 11 F. Supp.2d 474, 476 (E.D. Pa. 2014) (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945)). "The guiding principle of the Court's inquiry in determining whether to approve the settlement of a FLSA collective action is ensuring that an employer does not take advantage of its employees in settling their claim for wages." Dietz v. Budget Renovations & Roofing, Inc., Civ. No. 12-0718, 2013 WL 2338496, at *2 (M.D. Pa. May 29, 2013). When the court is asked to approve an FLSA settlement, it must "scrutiniz[e] the settlement for fairness," Dees v. Hydradry, Inc., 706 F. Supp.2d 1227, 1235 (M.D. Fla. 2010) (quoting Lynns's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982)), and "determine that it resolves a bona fide dispute." Bredbenner, 2011 WL 1344745, at *18 (quoting Lynn's Food, 679 F.2d at 1354). "Where, as here,

---

[4]In doing so, I further conclude that the Class Members meet the commonality and typicality requirements of Rule 23. See Fed. R. Civ. P. 23(a)(2),(3).

7

settlement negotiations took place before class certification and the parties seek class certification and settlement simultaneously, the Court must be 'doubly careful in evaluating the fairness of the settlement.'" Keller, 2014 WL 5591033, at *9 (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 805 (3d Cir. 1995)).

There is no question that there is a bona fide dispute at the root of this case. The dispute involves payment of compensation and wages. Disagreements over "hours worked or compensation due" clearly establish a bona fide dispute. Bredbenner, 2011 WL 1344745, at *18 (quoting Hohnke v. United States, 69 Fed. Cl. 170, 175 (Fed. Cl. 2005)). Therefore, I turn my attention to the fairness of the settlement.

In evaluating an FLSA compromise, the court scrutinizes the agreement in two steps.

> First, the court should consider whether the compromise is fair and reasonable to the employee (factors "internal" to the compromise). If the compromise is reasonable to the employee the court should inquire whether the compromise otherwise impermissibly frustrates the implementation of the FLSA (factors "external" to the compromise). The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace.

Lovett, 2015 WL 5334261, at *3 (quoting Brumley v. Camin Cargo Control, Inc., Civ. Nos. 08-1798, 09-6128, 10-2461, 2012 WL 1019337, at *4 (D.N.J. Mar. 26, 2012)).

a. Fairness – Internal Factors

The factors the court should consider in evaluating the fairness of a settlement in an FLSA case are those used in class action settlements. See Brumley, 2012 WL

1019337, at *4-5 (utilizing factors from Girsh v. Jepson, 521 F.2d 153, 157-58 (3d Cir. 1975)); In re Chickie's & Pete's Wage & Hour Litig., Civ. No. 12-6820, 2014 WL 911718, at *2-3 (E.D. Pa. Mar. 7, 2014) (same). Thus, the court should consider

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Brumley, 2012 WL 1019337, at *4-5 (quoting Girsh, 521 F.2d at 157).

This case involves 55 workers with claims under the FLSA and Pennsylvania wage and hour statutes, and therefore counsel recognized that they faced complex factual and legal issues that would have consumed a great amount of time and resources for both sides, with the possibility that any judgment would have been appealed. As a result, Plaintiffs faced the risk of establishing liability and damages, as well as the risk of maintaining the class action through trial, and Defendants faced the risk of a judgment in excess of the amount set forth in the Agreement. Therefore, after initial discovery, the parties agreed to stay proceedings and participated in a full-day mediation with Judge Blewitt (retired) of JAMS, who assisted the parties in reaching a settlement after arm's-length negotiations. As previously noted, the Agreement requires Defendant to pay a gross settlement sum of $865,000.00, from which a Settlement Fund of approximately $542,586.00 will be distributed to the Class Members, on a pro rata basis, for alleged

9

compensation and wage shortfalls, and from which "service award" payments of $10,000.00 will be made to the three Class Representatives. Agreement ¶¶ 5-6. There is no indication that the Settlement Fund falls outside the range of reasonableness in light of the best possible recovery.[5]

In addition, reaction by the class members has been overwhelmingly positive. None of the prospective class members submitted opt-out forms, and there were no objections made to the Agreement to either the claims administrator or counsel. Thus, it appears that there is no opposition to the Agreement's payment provisions to either the Class Members or the Class Representatives.[6]

Considering all of the <u>Girsh</u> factors, I conclude that the settlement is fair to the Class Members. The settlement came about after extensive arm's-length negotiations and resolves a bona fide dispute over unpaid compensation and wages. The Agreement provides for payment based on a pro rata basis based on the degree to which each Class Member was economically-impacted by the alleged wage shortfalls. Agreement ¶¶ 5-6. Additionally, as will be discussed in the next section, the court is satisfied with the reasonableness of the counsel fees and expenses.

---

[5]Based on the information provided to the court, I am not in a position to determine Defendant's ability to withstand a greater judgment. However, I do not find this to be a barrier to approval of the Agreement. Plaintiffs note that the Defendant recently announced plans to cut back and close certain properties or offices. Doc. 13-1 at 24 (ECF pagination).

[6]Furthermore, there is no suggestion that the Class Representatives have not fairly and adequately protected the interests of the class, which is the fourth and final prerequisite set forth in Rule 23(a). <u>See</u> Fed. R. Civ. P. 23(a)(4).

b.  Fairness – External Factors

Finally, in considering the fairness of the compromise, the court must consider whether the agreement frustrates implementation of the FLSA. The underlying goal of the FLSA is to "protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728, 739 (1981); see also 29 U.S.C. § 202(a). Courts have found that confidentiality provisions in FLSA settlement agreements undermine the goal of the FLSA by permitting retaliation through enforcement of the confidentiality provision. Brumley, 2012 WL 1019337, at *7.

Here, I find that that the Agreement promotes implementation of the FLSA. The Agreement provides for the establishment of a Settlement Fund from which payments will be made to Class Members, on a pro rata basis, for unpaid compensation and wages to which they were allegedly entitled. Because the no opt-outs or objections were submitted by the Class Members, there does not appear to be any fear of retaliation on the part of Defendant. Additionally, there is no confidentiality provision and the settlement is not sealed. Therefore, the external factors weigh heavily in favor of approving the settlement.

**B.  Motion for Attorneys' Fees and Reimbursement of Expenses (Doc. 14)**

Plaintiffs also move for an order awarding attorneys' fees of $285,450.00, constituting 33 percent of the settlement amount, and reimbursement of expenses in the amount of $3,714.00. Doc.14. The motion is unopposed and has not been contested by any of the 55 Class Members, and it will be approved.

The court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Because the language of the FLSA contemplates that the plaintiff-employee should receive his full wages, plus penalty, without incurring any expense for legal fees or costs, the FLSA requires the Court to evaluate the reasonableness of counsel's legal fees to assure both that counsel is adequately compensated and no conflict of interest taints the amount the wronged employee recovers under the settlement agreement." Brown v. TrueBlue, Inc., Civ. No. 10-514, 2013 WL 5408575, at *3 (M.D. Pa. Sept. 25, 2013) (citing Poulin v. Gen. Dynamics Shared Res., Inc., (W.D. Va. May 5, 2010)).

The Third Circuit has accepted the percentage-of-recovery method as an established approach in evaluating the award of attorneys' fees, and in fact it is "generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" Brumley, 2012 WL 1019337, at *9 (quoting In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005); In re Prudential Ins. Co. of Am. Sales Practice Litig., Agent Actions, 148 F.3d 283, 333 (3d Cir. 1998)). Further, district courts in this circuit have favored the percentage-of-recovery method in wage-and-hour cases where a common fund is established. Id. (citing Bredbenner v. Liberty Travel, Inc., Civ. Nos. 09-905, 09-124, 09-4587, 2011 WL 134475, at *18 (D.N.J. Apr. 8, 2011)). It is also more appropriate to use the percentage-of-recovery method where, as here, the settlement

releases Defendant from both damages and attorneys' fees. Erie County Retirees Assoc. v. County of Erie, 192 F.Supp.2d 369, 377 (W.D. Pa. 2002).

In determining whether the percentage fee is appropriate, the Third Circuit has stated that, among other factors, a reviewing court should consider seven factors:

> (1) The size of the fund created and the number of persons benefits; (2) the presence of absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorney involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000). The Third Circuit also stated that the reviewing court should then cross-check the percentage award against the lodestar method. Id.

Here, the Agreement requires Defendant to pay $865,000.00, of which approximately $542,586.00 constitutes the Settlement Fund to be distributed to the 55 Class Members, on a pro rata basis, resulting in an average payout of approximately $10,000.00. Agreement ¶ 5. The Agreement also provides that, subject to court review and approval, up to 33 percent of the total settlement amount will be distributed to class counsel to compensate them for all past and future attorney fees. Id. ¶ 13. There have been no objections made by any Class Members as to either the Agreement or the requested attorneys' fees. The skill and efficiency of the attorneys involved, and the complexity of duration of litigation, is clear from the nature of the claims and defenses contained in the pleadings, the procedural history of the case as reflected on the docket,

13

and the considerable work entailed with regard to development of the claims, the certification of the class, and all-day private mediation efforts. This factor is also supported by the Declaration of Michael Murphy, Esquire ("Murphy Decl."), Plaintiffs' lead counsel, setting forth the attorney qualifications, fee rates, and hours spent on this action, all of which appear to be reasonable. See Murphy Decl., Doc. 14-2 at 22-24 (ECF pagination). The complexity of the case, the possibility of class de-certification or failure at trial, and the likelihood of an appeal in the event of a favorable trial outcome, indicate that the Class Members were at risk for non-payment. As a result, the first six Gunter factors weigh in favor of the 33 percent award.

The seventh Gunter factor -- awards in similar cases -- also weighs in favor of the requested attorneys' fees. While there is no consensus on what percentage of a common fund is reasonable, our neighbor the Honorable Jose Linares has stated that "[t]he Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund" in common fund cases, and then cited several cases in which awards in the range of one-third were awarded. Brumley, 2012 WL 1019337, at *12 (citing Bredbenner, 2011 WL 1344745, at *21 (approving award of 32.6%); Gilliam v. Addicts Rehab. Ctr. Fund, Civ. No. 05-3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) (approving award of one-third of settlement fund); deMunecas v. Bold Food, LLC, Civ. No. 09-440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) (same). Thus, I find that all of the Gunter factors support the requested 33 percent award of attorneys' fees.

As previously noted, in common fund cases it is "advisable to cross-check the percentage award counsel asks for against the lodestar method of awarding fees so as to

14

insure that Plaintiffs' lawyers are not receiving an excessive fee at their clients' expense." Gunter, 223 F.3d at 195 n.1. The lodestar is calculated "by multiplying the number of hours [counsel] reasonably worked on a client's case by a reasonable hourly billable rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." Id. After calculating the lodestar, the court may "adjust the award upward or downward to reflect the particular circumstances of a given case." Id. (citing Prudential, 148 F.3d at 338-40; In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821-22 (3d Cir. 1995)).

Under the circumstances of this case, and after reviewing counsels' declaration and billing invoice attached thereto, see Murphy Decl. Exh. A ("Invoice"), the 33 percent fee is reasonable. The lodestar amount reflected on the Invoice is approximately $91,866.24 for 287.06 total hours of work. See Doc. 14-1 at 20 (ECF pagination); Invoice at 34 (ECF pagination).[7] As a result, the cross-check (or multiplier) in this case, which is determined by dividing the percentage-method award ($285,450.00) by the lodestar amount ($91,866.24), is 3.1. A multiplier of 3.1 falls within the range generally approved in common fund cases. See, e.g., Prudential, 148 F.3d at 341 ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar

---

[7]There is a minor discrepancy in the calculations contained in Plaintiffs' motion. Specifically, Plaintiffs aver that the Invoice amount of $91,866.24 is comprised of $41,833.32 for work performed by lead attorney Mr. Murphy (104.58 hours at $400.00 per hour), $49,357.92 for work performed by Michael Groh, Esquire (179.48 hours at $275.00 per hour), and $675.00 for work performed by Erica Kane, Esquire (3 hours at $225.00 per hour). See Doc. 14-1 at 20 (ECF pagination). However, multiplication of the numbers provided by counsel yield amounts of $41,832.00 for Mr. Murphy and $49,357.00 for Mr. Groh, which when added to Ms. Kane's amount yields a total sum of $91,864.00. The discrepancy of $2.24 has no bearing on the lodestar cross-check.

method is applied") (citation omitted); Milliron v. T-Mobile USA, Inc., 423 Fed. Appx. 131, 135 (3d Cir. 2011) ("[W]e have approved a multiplier of 2.99 in a relatively simple case.") (citing In re Cendant PRIDES Litig., 243 F.3d 722, 742 (3d Cir. 2001)); In re Linerboard Antitrust Litig., Civ. Nos. 98-5055, 99-1000, 99-1341, 2004 WL 1221350, at *16 ( E.D. Pa. June 2, 2004) (noting average lodestar multiplier was 4.35 in cases between 2001-2003, and 3.89 in cases between 1973-2003). Because the lodestar cross-check is within the reasonable range, I find that the 33 percent award set forth in the Agreement is reasonable.

With respect to the service award payments to the Class Representatives, I also conclude that they are reasonable. In addition to the payments to which they are entitled under the Agreement, the Agreement provides for a lump sum payment of $10,000.00 to be paid to each of the three Class Representatives. Agreement ¶ 11. In their motion, Plaintiffs explain that the basis of the service award payments is that the Class Representatives were actively involved in the litigation since before it was commenced, they provided the information and documents that formed the basis for the lawsuit, and they were willing to assume the risk associated with being a named plaintiff in a class action lawsuit against their current employer. Doc.13-1 at 24-25. For these reasons, and because the service award payments represent a small fraction of the $542,586 Settlement Fund, I conclude that the payments are reasonable. See, e.g., Bredbenner, 2011 WL 1344745, at *23-24 (approving "service fee" of $10,000.00 to each named plaintiff); In re Auto. Refinishing Paint Antitrust Litig., MDL Docket No. 1426, 2008 WL 63269, at *7-8

(E.D. Pa. Jan. 3, 2008) (Surrick, J.) (approving $30,000.00 award for each class representative).

Finally, with respect to fees and costs, Plaintiffs' counsel seek $3,714.00. Doc. 14 at 1. Mr. Murphy's Declaration contains an itemized accounting for the entirety of these fees and expenses, including $3,200.00 for JAMS mediation services. Murphy Decl. ¶ 12. Moreover, I note that these costs represent a tiny fraction of the settlement amount. Therefore, I find that these costs are entirely reasonable.

### III. CONCLUSION

This matter meets the prerequisites for civil actions set forth in Rule 23(a). The Settlement Class of 55 members meets the numerosity requirement, and the parties have established that Plaintiffs are similarly situated, meeting the commonality and typicality requirements. Moreover, the Class Representatives have fairly and adequately represented the interests of the Class Members. Therefore, I will certify the collective action and the settlement class. I also conclude that the settlement is a fair and reasonable resolution of the claims asserted by the class, and that the Agreement does not undermine the purpose of the FLSA. The fees, negotiated separately, are undeniably reasonable in light of the nature of the case and the hours and work devoted to it, and the litigation expenses are costs are likewise fair and reasonable. Therefore, I will approve the settlement and grant Plaintiffs' motion for fees and reimbursement of expenses.

An appropriate Order follows.